4togo LLC v. Pinterest, Inc. Does the word for have special relevancy of means for parsing? Your Honor, I think it is traditional that it invokes section 112F. It's means plus function claiming. It suggests that parsing is the function. If, as they argued in their briefing, a parser was some special structure, one would have expected them to use the word parser rather than server control means for parsing. In any event, there is no argument made anywhere that server control means is a special structure, much less a special structure that implements in hardware rather than in software the parsing function. Everything in the case suggests exactly the opposite. The Barnett Declaration says the implementing structure is software on a server that performs the processing or parsing of the recipient code. In their briefing at A267, they made exactly the same argument. So I think they first have waived any argument along the lines of what you suggest. But even if they hadn't, it wouldn't matter. Because server control means can serve as the structure sufficient to take this out of 112F only if those words denote some special structure. There isn't anything that indicates that server control means denote some special structure. And that's why they made the argument below and in their appellate brief that parsing was itself the structure. Can you step back for a minute and address the following? It may well be that we have a body of doctrine that establishes quite strong presumptions about how when you use certain words, they're going to mean a certain thing. When as appears here, the function that's being claimed appears to be trivially unitary. Nobody has meaningfully different ideas about how to do it. What is the public notice indefiniteness function being performed, being served by saying, here, this is indefinite, full stop? Understood. So I think, Your Honor, that the goal is to allow people not to be able to ignore or elide how we did it and just get to any way we did it. But if there's no meaningful range of how we did it? Well, I don't see in the record that it's something that says there are a lot of different ways of parsing. And they're kind of staking a claim to undefined territory. So I think it's entirely about language, not about what's beneath the language. I think the purposes of the doctrine are more important in cases where the language is critical to the operation of the invention and less important when they aren't. But I will note that there is nothing in the record that suggests that parsing is all done in one way. And in fact, the record suggests the opposite. So all we know about parsing is that there's a declaration from Mr. Barnett. And he says, well, people understand how to do parsing. And then at 8307, he says, in fact, here are two different methods of how one would do parsing in different computer languages. Now, none of that is in the specification. None of that is in the claims. That alone, I think, is sufficient under this court's precedent to render it irrelevant. But it is worth noting that what he actually says is, here's one way you could do parsing in this language. Here's a different way you could do parsing in this language. I don't know if this is even an intelligent question. He says, here are two different languages, two different strings of characters constituting the different commands in those languages, as you would expect, different strings of characters for different commands. Does that really refer to two different ways of doing parsing? So the answer is, we don't know. That is, there is nothing in the record that suggests one way or the other whether that's true. What I will note, just because this is mischaracterized a little bit in the briefing, these are not one line code. It's not that you have to write one line of code in order to parse. These are calls to existing codes that are written in existing computer languages. So what this says is, someone has already written a parser in ASP language. And we don't know what kind of instructions that refers to. We don't know whether it works in a particular way. We don't know if it works in a way that's completely different than the one written in PHP in different code. And that, to me, is precisely the point. The point of 112f is not just another enablement requirement. All of Mr. Barnett's declaration is directed to saying, in effect, people could figure out how to parse. They could go find existing software that's been written to parse. What 112f, I think, is directed to do is to say, you don't get to claim any possible means of doing this, any way of solving the problem. If you write your claim in means plus function format, you've got a point as to the particular means that you chose. And there is nothing, absolutely nothing, in the specification that does that. What if the expert declarant said, all right, this means for parsing limitation, it's not the point of novelty in this invention. It's nothing close to that. It's the most tertiary, rudimentary component of this claim. And by the way, there's only three ways known to man to perform this parsing function, x, y, and z. And so anybody reading this limitation would just know to go off the shelf and pick x, y, or z. And so the concern about preempting every possible way of performing the invention, it's really not that broad. It's just, if anything, capturing the three very boring known ways to perform this tertiary limitation, where the point of novelty is really in some other location in the claim. I guess to follow up on Judge Toronto's question, I'm not sure what our apparent rule accomplishes by forcing a patent drafter to actually have to write out and explain and arguably lard up the specification with descriptions of algorithms x, y, and z. So three responses, Your Honor. I think even in that hypothetical circumstance, we might still worry that even though x, y, and z are the only ways known of doing this now, somebody is going to discover an entirely different pathway. And one of the reasons people write claims in functional format language is that they want to try to capture unknown things that might work in a completely different way. The law would prevent them from doing that. Second, there is no evidence that this is, in fact, true in this case. Even if you thought in such a case. Wouldn't the law stop them anyway? Because then it would be, I don't know, your claim would be restricted to x, y, and z, and perhaps under the doctrine of equivalence, something equivalent to that. But I think that's precisely why the- And not later developed equivalence. Well, I think that's precisely why Section 112F works the way it does. In the absence of the Section 112F rule, that would not be true. You would be entitled to cover later developed equivalence because we test enablement and written description at the time of filing, and they can incorporate later technologies. Section 112F, though, says something different. It says, if you're going to say, if you're going to write your claim language functionally, you don't get to own everything now known or later developed that might perform that function. You only get to own the specific things you identify in the specification as algorithms and equivalence thereof. And we do that so that you can't just be lazy and decide, I'm not going to tell you how I did it or if one is better than the other. If they were identical, you could probably list them all and say, you know what, I'll use x, or y, or z. I don't care because they all work the same. You might end up with relatively broad claims. The final point, though, I want to make, and this is perhaps the most important under this court's case law, is expert testimony is irrelevant on this issue. This court has repeatedly said. On which issue? On the question of whether there is sufficient structure. But, I mean, we specifically, it seems to me, Rembrandt and Lighting Ballast say the contrary. Why not? Well, so the line this court has drawn is between efforts to understand whether when there is structure disclosed in the specification it is sufficient for a person of ordinary skill in the art to understand and implement it. There you can use expert testimony. But you cannot use expert testimony to read in structure that is absent, to basically say, here is what a parser is, which is precisely what Mr. I guess I read Rembrandt to say, here's this language. The district court had granted, I think it was summary judgment of indefiniteness by saying, there's no sufficient structure. We said, here's some one or more expert affidavits, declarations that say, no, that terminology is actually structure. It may not look like structure, but it is. And we said, reverse, that's a triable issue. I think it could be a triable issue if there were. On the basis of the expert testimony. It could be a triable issue if the factual question was, does this term actually connote structure? Is it well known as structure in the art, even though it looks like it's functional? That's not true here. And in no less than five cases in the last five years, this court has expressly said, you cannot use expert testimony. How many of them post-date Teva in the Supreme Court? The answer is, I think only one of them post-dates Teva, Triton Tech, Your Honor. But there's no reason to think that Teva changes this analysis, because indefiniteness is itself a pure question of law. So the question we are asking at the end of the day. We've said even since Teva, indefiniteness turns on claim construction, which now has at least potentially a factual component to which expert testimony can be relevant. So that's right. And that's what we did on remand and lighting ballots. So that's right here. But there's no testimony here that's claim construction relevant. What they're trying to do is identify a structure in the testimony that is not present or even hinted at in the specification. In Noah versus Intuit, this court says that is prohibited. They refer to the prohibition against using expert testimony. So too in Triton Tech. So too in Default Proof versus Home Depot. In Williamson-on-Bonk, this court said the testimony of one of ordinary skill in the art cannot supplant the total absence of structure from the specification. And in Eon versus AT&T, which is actually another post-Teva case. Thank you, Mr. Nunley. My time is up here. Thank you, Your Honor. We know what our cases hold. And the rebuttal from Mr. Bennett was about a minute and 20 seconds. Thank you, Your Honor. On the issue of using experts on the first step, advanced ground systems, 830F1331, used it for symbol generator to determine whether there was sufficient structure disclosed. Lighting World also did the same. Linear Tech also did the same. On the second step, expert testimony is regularly used, even in NOAA systems, which a defendant recognized. They said, even though the defendant alleged that there was no structure disclosed in the specification, the court looked at expert testimony. Because the defendant can't tell you to ignore expert testimony just by throwing up his hands and saying no structure. Second, defendants are arguing that there requires a specific structure in the specification, or in the claim language. This court has never required a specific structure. The language is, is there a sufficient structure? And when you look at, and there's never been a requirement to disclose code, or a particular programming language anywhere, in order to disclose specific structure. And when you look at the definition of algorithm, which is a series of instructions, in this case, you have a one step instruction. One step. That should be sufficient structure. And then as, with respect to the argument of what server control means, I apologize if the court misunderstands, but this is just the input, output, objective argument that was raised, not only in Barnett's declaration, but in the district court. And also argued in the opening and reply briefs, that if there's an input, output, and objective disclosed in the claims, there's sufficient structure disclosed. Thank you, your honors. Thank you, counsel. We'll take the case under advisement.